Diallo v. Holder

BIA
Chew, IJ
A098 903 886

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of May, two thousand eleven.

PRESENT:
> JOHN M. WALKER, JR.,
> PIERRE N. LEVAL,
> ROSEMARY S. POOLER,
> *Circuit Judges.*

———————————————————————

AMADOU MAIRIE DIALLO,

> *Petitioner*,

> v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

> *Respondent*.

10-1080-ag
NAC

———————————————————————

FOR PETITIONER:   Theodore Vialet, New York, NY.

FOR RESPONDENT:   Tony West, Assistant Attorney General; Anthony W. Norwood, Senior Litigation Counsel; Richard Zanfardino, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED, the decisions of the BIA and Immigration Judge are VACATED, and the case is REMANDED for further proceedings.

Amadou Mairie Diallo, a native and citizen of Guinea, seeks review of a February 24, 2010, order of the BIA affirming the May 1, 2008, decision of Immigration Judge ("IJ") George T. Chew, which denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Diallo*, No. A098 903 886 (B.I.A. Feb. 24, 2010), *aff'g* No. A098 903 886 (Immig. Ct. N.Y. City May 1, 2008). We assume the parties' familiarity with the underlying facts, procedural history, and issues presented on appeal.

Under the circumstances of this case, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence, treating such findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g.*, *Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007). We will vacate and remand for new findings if the agency's reasoning or its factfinding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir. 2005). We review de novo questions of law and the application of law to undisputed fact. *See Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003).

Petitioner Diallo testified that on November 15, 2003, while employed as an officer of the Guinea national police, he and his uncle took a test administered by an American non-governmental organization that was recruiting members of the military and police to help distribute food to refugees. The next day, military police officers (known as "gendarmes") arrested him, his uncle, and the rest of the people who had taken the test (about 100 in total), claiming that the purpose of their meeting had been to organize a coup. Diallo was imprisoned and tortured until May 20, 2004, when his brother, a lieutenant in the military, bribed a guard to let him escape. (Diallo's uncle died in prison as a result of torture.) Diallo went into hiding until August 16, 2004, when he was able to flee the country after his brother bribed airport employees.

In support of his timely application for asylum, withholding of removal, and CAT relief, Diallo submitted a written statement by his brother attesting that he had secured Diallo's release from prison. He also submitted reports by two doctors who had examined him in the United States and concluded that his scars and injuries were consistent with his allegations of torture and that he exhibited symptoms of depression and posttraumatic stress disorder.

At the hearing, the IJ found Diallo not credible. The IJ's sole basis for this finding is that, as shown by a pay stub, Diallo continued to receive pay as an officer of the civilian national police during his alleged imprisonment and torture by the military police. The IJ considered it inconceivable that anyone would continue to receive pay as an officer of the civilian police while being tortured by the military police on suspicion of fomenting revolt. When challenged on this

point by the IJ, Diallo pointed out that the Guinea government was corrupt, and that the employee who processed his pay had an interest in continuing to do so while Diallo was detained because the employee could then keep some or all of Diallo's pay (which was paid in cash) for himself. Nevertheless, the IJ concluded that the pay stub "totally destroy[ed] [Diallo]'s story," which he likened to "a house of cards that has collapsed." On that basis alone, the IJ found Diallo incredible and denied his petition. The BIA affirmed, stating that the adverse credibility determination was not clearly erroneous.

The IJ's guess about the bureaucratic operations of the Guinea government – it was nothing more than that – did not justify finding Diallo incredible. An IJ is not entitled to reject a petitioner's testimony solely on the basis of speculation, totally unsupported by the record, about how a foreign government functions. *See Biao Yang v. Gonzales*, 496 F.3d 268, 272 (2d Cir. 2007) (credibility findings based on "bald speculation" are arbitrary and capricious); *see also Baba v. Holder*, 569 F.3d 79, 84 n.3 (2d Cir. 2009) (noting that (1) "substantial information about the functioning of the [foreign] government" is required to infer that those imprisoned and beaten for political opposition would not be permitted to retain their civil service jobs; and (2) without such information, an IJ's reliance on that inference to deny an asylum application "constitute[s] an abuse of discretion").

There is nothing inherently implausible about Diallo remaining on the payroll of the civilian police while imprisoned and tortured by the military police on suspicion of fomenting revolt. There was no evidence that any formal charges were brought against Diallo. The IJ's assumption that a civilian police officer would necessarily be removed from the payroll when seized by the military on suspicion of treason is pure speculation and illogical at that. There is no necessary logic to the proposition that upon the military's seizure and torture of a civilian police officer (especially without any charges against him), he would be removed from the payroll of the civilian police. In fact, there is no reason to assume the civilian police even knew of the suspicions that formed the basis for Diallo's arrest. In sum, the IJ's adverse credibility determination, based on assumptions about governmental process and structure in Guinea that lacked any basis in the record, was an abuse of discretion. We therefore vacate the decisions of the BIA and IJ and remand for further proceedings.

We take the additional step of directing the BIA, should it find it appropriate to remand further, to assign the case to a different immigration judge because an objective observer could question the IJ's impartiality. Despite the lack of any evidence that Diallo was a persecutor of others – and indeed the Government did not argue that he was – the IJ concluded that Diallo's job as a police officer in Guinea "raises many questions as to whether or not [Diallo] participated in persecution of others." The IJ's unprompted blanket assumption about the corrupt nature of all Guinea police officers requires a remand to a different immigration judge.

For the foregoing reasons, the petition for review is GRANTED, the decisions of the BIA and IJ are VACATED, and the case is REMANDED for further proceedings.  Should the BIA find it appropriate to remand further, we direct the BIA to assign the case to a different immigration judge.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk